IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

KEVIN M. LYNN,                              *

    Plaintiff,                        *

        v.                      *

                                      *        CIVIL NO.: WDQ-11-2824

MONARCH RECOVERY MANAGEMENT,
INC.,                                       *

    Defendant.                        *

                                      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Kevin M. Lynn sued Monarch Recovery Management, Inc. ("Monarch")[1] for violating the Telephone Consumer Protection Act[2] (the "TCPA"), the Maryland Telephone Consumer Protection Act[3] (the "MDTCPA"), and the Fair Debt Collection Practices Act[4] (the "FDCPA"). Pending are the parties' cross motions for summary judgment, and Lynn's motion to certify two questions of law to the Maryland Court of Appeals. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, Monarch's motion for summary judgment and Lynn's cross motion for summary

---

[1] F/k/a "Academy Collection Service, Inc.," or "ACS." Compl. ¶ 2.

[2] 47 U.S.C. § 227.

[3] Md. Code Ann., Com. Law §§ 14-3201, *et seq.*

[4] 15 U.S.C. §§ 1692, *et seq.*

judgment will be granted in part and denied in part, and Lynn's motion to certify will be denied.

## I. Background[5]

Since 2006, Lynn has lived on Grouse Court in Frederick, Maryland. Lynn Aff. ¶ 1. The house was previously owned by George Teddy. *Id.* ¶ 3. Also since 2006, Lynn's house phone number has been xxx-xxx-2250 (the "2250 number"). *Id.* ¶ 4. Initially, Lynn subscribed to the 2250 number through Verizon, as a residential line. *Id.* ¶ 5. On or about June 24, 2009, Lynn obtained Voice over Internet Protocol ("VoIP") service[6] for the 2250 number through Canadian company Swiftvox, Inc., d/b/a VoIP.MS. *Id.* ¶ 6; Lopez[7] Aff. ¶ 1. VoIP.MS charges Lynn for incoming calls to the 2250 number, and separately charges Lynn for the transmission of caller ID information of incoming calls. Lynn Aff. ¶ 7.

Monarch is a debt collector. Compl. ¶ 3; Am. Answer ¶ 3; ECF No. 42 at 3. Between July 2010 and January 2011, three

---

[5] On cross motions for summary judgment, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

[6] VoIP technology transmits voice calls using a broadband Internet connection instead of a regular phone line. *Voice over Internet Protocol (VoIP)*, Fed. Comm. Commission, http://www.fcc.gov/encyclopedia/voice-over-internet-protocol-voip (last visited Mar. 17, 2013).

[7] "Lopez" is Alex Lopez, a VoIP.MS employee. Lopez Aff. ¶ 1.

separate accounts were placed with Monarch for collection.  *See* ECF Nos. 42-1, 42-2, 42-3.  Two of the accounts named Teddy as the debtor, and listed Teddy's address as the same Grouse Court address as Lynn's.  ECF Nos. 42-1, 42-2.  The third account named Mark Lynn as the debtor.  ECF No. 42-3.  Mark Lynn is Lynn's brother, and has lived in or near Tacoma, Washington for eight years.  Lynn Aff. ¶ 23.[8]  Monarch "identified" the 2250 number as the telephone number for both debtors.  Mazzacano Dep.[9] at 39-40, 127.[10]

Beginning on July 19, 2010, Monarch began calling the 2250 number to collect on the accounts.  ECF No. 48-5; *see* Mazzacano Dep. at 6.[11]  Monarch called the 2250 number 37 times between July 19, 2010 and May 17, 2011.  ECF No. 48-5.  The calls were made using Aspect dialer equipment, an automatic telephone

---

[8] According to Lynn, his brother's credit card account was "used primarily if not solely for his personal, family[,] or household purposes."  Lynn Aff. ¶ 24.

[9] "Mazzacano" is Monarch's Chief Administrative Officer/Owner Diane Mazzacano.  *See* Mazzacano Dep. at 1; Monarch's Answer to Interrog. No. 1.

[10] Specifically, Monarch received the phone number from Accurint, *see* Mazzacano Dep. at 39-40, 127, which Lynn alleges is Monarch's "skip trace" company.  *See* ECF No. 58 at 2.

[11] Mazzacano testified that Monarch called the 2250 number "with a specific purpose of" reaching the debtor on the accounts.  Mazzacano Dep. at 6, 9.  At Lynn's deposition, Lynn's counsel stipulated that all 37 calls were commercial, and that none was a telephone solicitation or made for purposes of telemarketing.  Lynn Dep. at 14-16.

dialing system ("ATDS").   ECF No. 33.[12]   According to Monarch,

the same script was played each time Lynn picked up the phone:

> This is a message for (Consumer's name), if this is
> not (Consumer's name), please hang up or disconnect.
> There will now be a 3-second pause in this message.
> (*Pause for 3 seconds*).   By continuing to listen to
> this message, you acknowledge that you are (Consumer's
> name).   This is (Dunning name) from Monarch Recovery
> Management.     This   communication   is   from   a   debt
> collector.   This is an attempt to collect a debt, and
> any   information   obtained   will   be   used   for   that
> purpose.   Please contact me about this matter at 1-
> 800-220-0605, Ext. _____.

ECF No. 42 at 17; ECF No. 42-6 (emphasis in original) (the "Foti

Message").[13]   In addition to a monthly rate of $1.49, Lynn's

VoIP.MS account for the 2250 number was charged $0.0149 per

minute for each of Monarch's 37 incoming calls, in six-second

increments.   Lynn Aff. ¶ 9; Lopez Aff. ¶¶ 3-5.   The account was

separately charged $0.00149 for each transmission of caller ID

for the incoming calls.   Lynn Aff. ¶ 10; Lopez Aff. ¶ 3.   The

---

[12] The TCPA defines "automatic telephone dialing system" as
equipment with the capacity: "(A) to store or produce telephone
numbers to be called, using a random or sequential number
generator; and (B) to dial such numbers."   47 U.S.C. §
227(a)(1).   The parties have stipulated that Monarch's calls to
the 2250 number used an ATDS, as the TCPA defines that term.
ECF No. 33.

[13] Monarch did not "generally" leave voice messages when it
called the 2250 number, although Lynn's VoIP phone is capable of
receiving them.   Lynn Aff. ¶ 18.   Lynn asserts that he recorded
a message similar to the Foti message, which lasted about 45
seconds.   *Id.* ¶¶ 18-19.   Lynn concludes that Monarch "could not"
have left its Foti message for calls shorter than 45 seconds.
*Id.* ¶ 19.   Of the 37 calls, only five appear to have lasted more
than 45 seconds.   *See* ECF No. 48-5.

calls "annoyed" Lynn and his wife, who "complain[ed] loudly" to Lynn about them.   Lynn Aff. ¶ 17.   Lynn did not give permission to Monarch to call him or his number.   *Id.* ¶ 21.   On May 12, 2011, Lynn called Monarch twice and advised the recipient that calling his number cost him on a per-minute basis.   *Id.* ¶ 22. Monarch called Lynn three more times, on May 13 and 17, 2011. ECF No. 48-5.

On August 30, 2011, Lynn filed suit against Monarch in the Circuit Court for Baltimore County, Maryland.   ECF No. 2.[14]   On

---

[14] The complaint alleges six causes of action (two each under the TCPA, MDTCPA, and FDCPA):
(1) Violation of 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting a person from using an ATDS to call any telephone number assigned to "any service for which the called party is charged for the call") (Count One);
(2) Injunctive relief under 47 U.S.C. § 227(b)(3) (Count Two);
(3) Violation of Md. Code Ann., Com. Law § 14-3201, for the same TCPA violation alleged in Count One (Count Three);
(4) Violation of Md. Code Ann., Com. Law § 14-3201, for violation of TCPA regulation 47 C.F.R. § 64.1200(b)(1) (requiring that all artificial or prerecorded voice telephone messages "state clearly the identity of the business, individual, or other entity that is responsible for initiating the call") (Count Four);
(5) Violation of 15 U.S.C. § 1692b(3) (prohibiting debt collectors communicating with someone other than the consumer, for the purpose of acquiring location information about the consumer, from communicating with such person more than once) (Count Five); and
(6) Violation of 15 U.S.C. § 1692d(6) (prohibiting debt collectors from placing telephone calls without meaningfully disclosing their identity) (Count Six).
Lynn sought $ 55,500 in statutory damages for Count One; an injunction for Count Two; $18,500 in statutory damages, and attorney's fees, for Count Three; Two; $18,500 in statutory damages, and attorney's fees, for Count Four; $37,000 in actual and statutory damages, and attorney's fees, for Count Five; and

October 3, 2011, Monarch removed the action to this Court. ECF No. 1. On October 14, 2011, Monarch answered the complaint. ECF No. 5. On November 14, 2011, Monarch filed an amended answer. ECF No. 17. On July 27, 2012, Monarch moved for summary judgment. ECF No. 41. On August 18, 2012, Lynn opposed Monarch's motion and cross moved for summary judgment. ECF No. 48. On September 11, 2012, Monarch opposed Lynn's cross motion and replied. ECF No. 57. On September 22, 2012, Lynn replied. ECF No. 58. On December 6, 2012, Lynn moved to certify two questions of law regarding the MDTCPA to the Maryland Court of Appeals. ECF No. 69. On December 26, 2012, Monarch opposed the motion to certify. ECF No. 70. On January 20, 2013, Lynn replied. ECF No. 71.

II. Analysis

  A. Legal Standard

     Under Fed. R. Civ. P. 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] In considering the motion, "the

---

$38,000 in actual and statutory damages, and attorney's fees, for Count Six. Compl. at 10.

[15] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,' "and restored the word" 'shall' . . . to express the direction to grant summary judgment." Fed.R. Civ. P. 56 advisory committee's note.

judge's function is not . . . to weigh the evidence and
determine the truth of the matter but to determine whether there
is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  A
dispute about a material fact is genuine "if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most
favorable to . . . the nonmovant, and draw all reasonable
inferences in [his] favor," *Dennis v. Columbia Colleton Med.
Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court
must abide by the "affirmative obligation of the trial judge to
prevent factually unsupported claims and defenses from
proceeding to trial," *Bouchat v. Balt. Ravens Football Club,
Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation
marks omitted).

When cross motions for summary judgment are filed, "each
motion must be considered individually, and the facts relevant
to each must be reviewed in the light most favorable to the
nonmovant." *Mellen*, 327 F.3d at 363 (*citing Rossignol v.
Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

B. The Statutes

1. The TCPA

Congress enacted the TCPA to "curb abusive telemarketing
practices that threaten the privacy of consumers and

7

businesses." *Ashland Hosp. Corp. v. SEIU, Dist. 1199 WV/KY/OH*,
No. 11-6006, 2013 WL 627234 (6th Cir. Feb. 21, 2013).
Commensurate with this goal, the TCPA principally outlaws four
practices. *See* 47 U.S.C. § 227(b)(1)(A)-(D). Two are relevant
here.

First, § 227(b)(1)(A)(iii) (the "call charged" provision)
prohibits persons from "mak[ing] any call (other than a call
made . . . with the prior express consent of the called party)
using any [ATDS] or an artificial or prerecorded voice," to "any
telephone number assigned to . . . any service for which the
called party is charged for the call."

Second, § 227(b)(1)(B) (the "residential telephone line"
provision) prohibits persons from "initiat[ing] any telephone
call to any residential telephone line using an artificial or
prerecorded voice to deliver a message without the prior express
consent of the called party, *unless the call is* . . . exempted
by rule or order by the [FCC] under paragraph (2)(B)" (emphasis
added). Section 227(b)(2)(B)(ii) authorizes the FCC to exempt
from paragraph (1)(B) "such classes or categories of calls made
for commercial purposes as the Commission determines--(I) will
not adversely affect the privacy rights that this section is
intended to protect; and (II) do not include the transmission of
any unsolicited advertisement." Acting on this authority, the
FCC promulgated 47 C.F.R. § 64.1200(a)(2)(iii), which exempts

from TCPA liability any call "made for a commercial purpose but [that] does not include or introduce an unsolicited advertise- ment or constitute a telephone solicitation."

The TCPA authorizes a private right of action for violations of § 227(b), providing that, "[a] person or entity may, *if otherwise permitted by the laws or rules of court of a State*, bring in an appropriate court of that State—(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions." 47 U.S.C. § 227(b)(3) (emphasis added). "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." *Id.*

In addition to outlawing certain practices, the TCPA sets forth technical and procedural requirements for certain communications. *See* 47 U.S.C. § 227(d). Under § 227(d)(1), it is "unlawful" for any person "(A) to . . . make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed

9

under this subsection, or to use any . . . automatic telephone
dialing system in a manner that does not comply with such
standards[.]"   Section 227(d)(3) ("Artificial or prerecorded
voice systems") provides that the FCC

> shall prescribe technical and procedural standards for
> systems that are used to transmit any artificial or
> prerecorded   voice   message   via   telephone.   Such
> standards shall require that—
> (A)  all artificial or prerecorded telephone messages
> (i)  shall, at the beginning of the message, state
> clearly the identity of the business, individual, or
> other entity initiating the call, and (ii) shall,
> during or after the message, state clearly the
> telephone number or address of such business, other
> entity, or individual[.]

Implementing § 227(d)(3), the FCC promulgated 47 C.F.R. §
64.1200(b), which requires all artificial or prerecorded voice
telephone messages to state, at the beginning of the message,
the identity of the entity responsible for initiating the call.
Unlike § 227(b), § 227(d) does not authorize a private right of
action for violations of that subsection.   *See generally* 47
U.S.C. § 227(d).

Finally, 47 U.S.C. § 227(f) discusses the TCPA's effect on
state law.   Under § 227(f)(1) ("State law not preempted"),

> *Except for the standards prescribed under subsection
> (d) of this section* . . . nothing in this section or
> in the regulations prescribed under this section shall
> preempt any State law that imposes more restrictive
> intrastate requirements or regulations on, or which
> prohibits—
> (A) the use of telephone facsimile machines or other
> electronic devices to send unsolicited advertisements;

(B) the use of automatic telephone dialing systems; [or]
(C) the use of artificial or prerecorded voice messages[.] (emphasis added)."

2. The MDTCPA

The MDTCPA declares, in relevant part, that a person "may not violate . . . [t]he [TCPA]."[16] Md. Code Ann., Com. Law § 14-3201. Otherwise stated, the statute was enacted "merely to enable a private right of action under the TCPA." *Worsham v. Ehrlich*, 957 A.2d 161, 172 (Md. Ct. Spec. App. 2008), *cert. denied*, 406 Md. 747 (2008). Under § 14-3202(b), "an individual who is affected by a violation of this subtitle may bring an action against a person that violates this subtitle to recover: (1) Reasonable attorney's fees; and (2) Damages in the amount of the greater of: (i) $500 for each violation; or (ii) Actual damages sustained as a result of the violation." Further, "[f]or purposes of this section, each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation." *Id.* § 14-3202(c).

---

[16] Section 14-3201 provides, in full:
A person may not violate:
(1) The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310); or
(2) The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L).

3. The FDCPA

By enacting the FDCPA, Congress sought to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). A "debt collector" is "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).[17] Two debt collection practices are relevant here. First, § 1692b regulates the means by which debt collectors may obtain "location information"[18] about debtors, providing that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall":

> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
> (2) not state that such consumer owes any debt; [and]
> (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information . . . .

---

[17] Monarch admits that it is a debt collector under the FDCPA. *See* ECF No. 42 at 3.

[18] "Location information" is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

Second, § 1692d prohibits harassment or abuse by debt collectors, including "the placement of telephone calls without meaningful disclosure of the caller's identity."  *Id.* § 1692d(6).  Section 1692k provides a private right of action against debt collectors who violate FDCPA provisions.

C. Motions for Summary Judgment

 The parties have cross moved for summary judgment on all counts.  ECF Nos. 41, 48.

1. Monarch's Motion

Monarch argues that it is entitled to summary judgment on all counts, on the grounds that: (1) Monarch's calls to Lynn are exempt from the TCPA under the residential telephone line provision and its accompanying regulatory exemptions; (2) Lynn's MDTCPA claims fail because one is derivative of his TCPA claims and there is no private right of action for the other; and (3) Lynn's FDCPA claims are "without factual or legal support."  ECF No. 42 at 1-3.  Lynn counters that: (1) Monarch's calls to Lynn are not exempt from the TCPA because they fall under the charged call provision; (2) Monarch violated the MDTCPA by violating the TCPA and the statute's implementing regulations; and (3) Monarch's FDCPA arguments are "meritless."  ECF No. 48-1 at 8, 12, 16, 18.

a. TCPA Claims (Counts One and Two)

In Count One, Lynn alleges that Monarch violated the TCPA's call charged provision by initiating calls to the 2250 number, which was associated with VoIP service and resulted in his being charged for the calls. Compl. ¶¶ 54-57. In Count Two, Lynn seeks injunctive relief under the TCPA for the same conduct. Id. ¶¶ 64-65. Monarch argues that it is entitled to summary judgment on both claims, on the grounds that its calls to the 2250 number are "exempt" from the TCPA under the residential telephone line provision and applicable regulatory exemption. ECF No. 42 at 5. Lynn counters that the residential telephone line provision does not apply to the calls, and even if it does, Monarch's conduct separately violated the call charged provision--for which there is no accompanying exemption. ECF No. 48-1 at 7-11. Lynn further argues that he has shown entitlement to injunctive relief. Id. at 11.

i. Count One

Monarch argues that the residential telephone line provision applies to its calls to the 2250 number, because the complaint alleges that Monarch violated the TCPA by calling Lynn's "residential phone telephone [sic] line." ECF No. 42 at 6-7 (citing Compl. ¶¶ 1, 56). Monarch further argues that the calls are exempt from liability under that provision and 47 C.F.R. 64.1200(a)(2)(ii), because it is "undisputed" that the

14

calls were made for a commercial purpose and were not unsolicit-
ed advertisements or telephone solicitations.  *Id.* at 7 (*citing*
Lynn Dep. at 14-16).

As discussed above, the residential telephone line
provision (§ 227(b)(1)(B)) prohibits persons from "initiat[ing]
any telephone call to any residential telephone line using an
artificial or prerecorded voice to deliver a message without the
prior express consent of the called party, *unless the call is .
. .* exempted by rule or order by the [FCC] under paragraph
(2)(B)" (emphasis added).  Section 227(b)(2)(B)(ii) authorizes
the FCC to exempt from paragraph (1)(B) "such classes or
categories of calls made for commercial purposes as the
Commission determines--(I) will not adversely affect the privacy
rights that this section is intended to protect; and (II) do not
include the transmission of any unsolicited advertisement."
Implementing that paragraph, 47 C.F.R. § 64.1200(a)(2)(iii)
exempts from TCPA liability any call "made for a commercial
purpose [that] does not include or introduce an unsolicited
advertisement or constitute a telephone solicitation."[19]

The Court will assume, for this analysis, that the
residential telephone line provision applies to Monarch's calls
and that the calls are within the provision's regulatory

---

[19] 47 C.F.R. § 64.1200(a)(2)(iv) also exempts calls made to
persons with whom the caller has an "established business
relationship."

exemption for commercial calls that are not advertisements or solicitations. That Monarch would be entitled to summary judgment for an alleged violation of the residential telephone line provision is irrelevant: no such allegation is present here. Instead, Lynn's TCPA claims allege that Monarch violated the *call charged provision* (47 U.S.C. § 227(b)(A)(iii)). Compl. ¶¶ 56, 63.

The TCPA's call charged provision (§ 227(b)(1)(A)(iii)) provides, in full,

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice--
> . . .
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, *or any service for which the called party is charged for the call*[.] (emphasis added).[20]

_____

[20] It is unclear from the statutory text whether the phrase "any service for which the called party is charged" equally describes the types of services that precede it--i.e., the paging, cellular telephone, specialized mobile radio, or other radio common carrier services--or describes a different type of service than those listed before it. Under the doctrine of "last antecedent," "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *United States v. Hayes*, 129 S.Ct. 1079, 1086 (2009) (internal quotation marks omitted). In the absence of other indicia of meaning, *see id.*, this Court will construe the phrase "for which the called party is charged for the call" to modify "any service," not the preceding sections of the statute. *See Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS

There is no evidence that Monarch's calls to Lynn were made for emergency purposes or with Lynn's prior express consent. Moreover, the parties have stipulated that the calls used an ATDS, as that term is defined by the TCPA. ECF No. 33. Lynn's VoIP service provider charged him for each of the calls. Lynn Aff. ¶ 10; Lopez Aff. ¶ 3. Monarch nevertheless urges this Court to "reject" application of the call charged provision, on four grounds. ECF No. 42 at 10. None is persuasive.

First, Monarch argues that Lynn "clearly" alleges in his complaint and deposition that the subject calls were made to his "residential phone telephone line," and is bound by those allegations. ECF No. 42 at 10.[21] In support, Monarch cites *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678 (D. Md. 2001), which recognized that a plaintiff may not "amend" his complaint--such as by raising a new theory of liability--in opposition to a motion to dismiss or for summary

---

(BGS), 2011 WL 579238, at *5-6 (S.D. Cal. Feb. 9, 2011); *see also Buslepp v. Improv Miami, Inc.*, No. 12-60171-CIV, 2012 WL 1560408, at *2 (S.D. Fla. May 4, 2012) (agreeing with the plaintiff's interpretation that "if a call is made to a telephone number assigned to a cellular telephone service . . . th[e]n that allegation is sufficient to assert a claim. A plaintiff could *alternatively* state a claim if his telephone number is assigned to *any service* for which the called party is charged." (emphasis added)).

[21] At various points in his complaint and deposition, Lynn referred to the 2250 number as his "residential" number. *See* Compl. ¶¶ 19, 21, 23; Lynn Dep. at 2.

judgment. *See id.* at 686 (*citing Shanahan v. City of Chicago*,
82 F.3d 776, 781 (7th Cir. 1996)). Here, Count One of the
complaint specifically alleges that Monarch violated the call
charged provision. *See* Compl. ¶ 56. That Lynn's allegations
may have also triggered application of the residential telephone
line provision is irrelevant. There has been no improper
amendment.

Second, Monarch asserts that "no court" has held that calls
to home phones are "subject" to the TCPA's call charged
provision "simply because the phones are 'attached' to VoIP
equipment or technology," ECF No. 42 at 11, and states that one
court has held to the contrary, *id.* In support, Monarch cites
*Daniel v. West Asset Management, Inc.*, No. 11-10034, 2011 WL
3207790 (E.D. Mich. July 27, 2011), in which the plaintiff moved
for reconsideration of an order dismissing her TCPA claims under
the residential telephone line provision, on the grounds that
she used "internet telephony." *Id.* at *2. The court denied the
motion, noting that "there is no indication that the internet
telephony service is a 'paging service, cellular telephone
service, specialized mobile radio service, or other radio common
carrier service, or any service for which the called party is
charged for the call' under 47 U.S.C. § 227(b)(1)(A)(iii)." *Id.*
*Daniel* is not binding on this Court. Further, the decision does
not indicate whether the "internet telephony" at issue resulted

in charges for the incoming calls.  *See id.*  Here, it is
undisputed that it did.

Monarch's third and fourth theories are related.
Specifically, Monarch argues that Lynn "has not shown and cannot
show that his use of VoIP service or technology fundamentally
changed the nature of his residential telephone line to which
Monarch made calls."  ECF No. 42 at 11; *id.* at 12 ("[T]here is
no practical distinction between a traditional residential
telephone line and a residential telephone line with attached
VoIP technology or service.").  "In short, plaintiff's
residential telephone line was set up and used like any typical
home phone, and so it is appropriately governed by the TCPA
residential telephone line provision and the FCC exemptions
enacted thereunder."  *Id.* at 12.[22]  As discussed above, even
assuming that Lynn's use of VoIP service did not fundamentally
change the nature of his residential telephone line, Lynn has
established that the service charged him for the calls.  Lynn's
TCPA claim thus fits squarely within the separate prohibition of
the call charged provision.  *See supra.*

---

[22] Lynn counters Monarch's argument by reference to his
affidavit, *see* ECF No. 48-1 at 9-10, which purports to explain
how his VoIP technology operates.  Lynn Aff. ¶¶ 13-15; *see also*
Lynn Dep. at 3-8.  However, Lynn has provided no information
that demonstrates his competency to testify about these
technical issues.  *See* Fed. R. Civ. P. 56(c)(4).  Thus, the
Court will disregard these assertions.

ii.   Count Two

Count Two seeks a permanent injunction prohibiting Monarch from violating the TCPA, including through the acts of others. Compl. ¶ 65.  "[A] complainant need not allege or prove irreparable harm when it invokes a statute that authorizes injunctive relief.  All that need be proved is a violation of the statute." *Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171 (4th Cir. 1988).  47 U.S.C. § 227(b)(3) authorizes injunctive relief for a violation of the subsection. Further, Lynn has shown that Monarch violated that subsection's call charged provision, § 227(b)(1)(A)(iii).  *See supra* Part II.C.1(a)(i).  Injunctive relief is therefore warranted.

Monarch's motion for summary judgment on Counts One and Two will be denied.

b. MDTCPA Claims (Counts Three and Four)

In Count Three, Lynn alleges that Monarch violated the MDTCPA by violating the TCPA's call charged provision.  Compl. ¶ 66.  In Count Four, Lynn alleges that Monarch violated the MDTCPA by violating an implementing *regulation* requiring that all artificial or prerecorded telephone messages state, at the beginning of the message, the identity of the entity responsible for initiating the call.  *Id.* ¶ 67.  Monarch argues that it is entitled to summary judgment on both claims, because Lynn's failure to establish a TCPA violation renders the derivative

claim "baseless," and a violation of the TCPA's technical or
procedural standards does not give rise to an actionable claim--
rendering Count Four futile.  ECF No. 42 at 13-14.  Lynn
counters that Monarch violated the TCPA, precluding summary
judgment on Count Three, and the regulatory violation is
actionable under the MDTCPA.  ECF No. 48-1 at 12-16.

      i.    Count Three

Count Three derives from Count One.  Compl. ¶ 66.  The
MDTCPA declares, in relevant part, that a person "may not
violate . . . [t]he [TCPA]."  § 14-3201.  Under § 14-3202(b),
"an individual who is affected by a violation of this subtitle
may bring an action against a person that violates this
subtitle."  As discussed above, Lynn has shown that Monarch's
conduct alleged in Count One violated the TCPA's call charged
provision, § 227(b)(1)(A)(iii).  *See supra* Part II.C.1(a)(i).
Monarch's motion for summary judgment on Count Three will be
denied.

      ii.    Count Four

Count Four is less easily resolved.  Monarch argues that it
is entitled to summary judgment on Lynn's 47 C.F.R. §
64.1200(b)(1) claim because, unlike a violation of § 227(b), a
violation of the *technical standards* prescribed by § 227(d), as
implemented by 47 C.F.R. § 64.1200(b), does not authorize a
private right of action under the TCPA--rendering Lynn's MDTCPA

claim under that regulation unsuccessful.  ECF No. 42 at 14.

Lynn objects that Monarch's reasoning is "based on a failure to

distinguish between a restriction on conduct, and a private

action to enforce that restriction."  ECF No. 48-1 at 13.

Monarch counters that Lynn's asserted distinction "has been

rejected by Maryland courts."  ECF No. 42 at 14.

Contrary to Monarch's suggestion, only one Maryland case

has directly addressed whether the MDTCPA provides a private

right of action for violations of the TCPA's technical or

procedural regulations.  Because that case--*Worsham v. Ehrlich*,

957 A.2d 161, 172 (Md. Ct. Spec. App. 2008), *cert. denied*, 406

Md. 747 (2008)--is central to the Court's analysis, it will be

discussed in some detail.

In *Ehrlich*, the plaintiff alleged violations of the TCPA

and the MDTCPA.  957 A.2d at 163.  The allegations arose from

prerecorded political campaign calls that solicited votes

without providing the telephone number of the business or entity

responsible for the call.  *Id.*  The circuit court granted the

defendants' motions to dismiss, reasoning--in relevant part-that

under 47 C.F.R. § 64.1200(b), implementing 47 U.S.C. § 227(d),

there was no private right of action; the MDTCPA requires a

violation of the TCPA; and the MDTCPA "can not [sic] create a

private right of action where none exists under the federal

statute because it is preempted by the federal statute." *Id.* at 165.

On appeal, the plaintiff acknowledged that the MDTCPA "makes a violation of the TCPA a violation of Maryland law." *Ehrlich*, 957 A.2d at 166.  The plaintiff also acknowledged that consumers "do not have a private right of action arising under . . . § 227(d)," because § 227(d) "does not contain a private right of action, such as . . . § 227(b) and § 227(c) . . . have." *Id.* (internal quotation marks omitted).  However, the plaintiff--like Lynn--contended that the MDTCPA "creates its own private right of action for *any* violation of the federal TCPA," including § 227(d) and "any regulations promulgated thereto." *Id.* (emphasis added) (internal quotation marks omitted).  The plaintiff concluded that; "although a § 227(d) violation is not actionable *directly* under federal law, *it is actionable under the MDTCPA*." *Id.* (emphases added).  The Maryland Court of Special Appeals disagreed.

The court began by explaining that, whereas § 227(b)(3) creates a private cause of action for violation of *that subsection* (i.e., subsection (b) and its implementing regulations), § 227(d) does not.[23]  Addressing the plaintiff's

---

[23] *Ehrlich*, 957 A.2d at 171 (*citing* 47 U.S.C. §§ 227(b)(3), (d), (f)(1); *Adler v. Vision Lab Telecomms., Inc.*, 393 F. Supp. 2d 35, 38, 39 (D.D.C. 2005); *Boydston v. Asset Acceptance, LLC*, 496 F. Supp. 2d 1101, 1106 (N.D. Cal. 2007) ("In contrast to §

assertion that the MDTCPA created a separate right of action for
§ 227(d) violations, the court noted that the MDTCPA "does not
describe conduct that constitutes a violation of the Maryland
statute," but instead "references whatever constitutes a
violation of the TCPA." *Ehrlich*, 957 A.2d at 172.  And, under
the plain language of § 227(f)(1),[24] "the States may create their
own more restrictive standards than the federal TCPA, *except
with regard to subsection (d)*." *Id.* (emphasis added).  Because
the plaintiff's "only potential claim" was under subsection (d),
which "provides for no private right of action," and subsection
(f) "makes it clear that states can not [sic] create a private
right of action under subsection (d)," the court concluded that
the plaintiff's claim under that subsection was properly
dismissed. *Id.*

Here, as in *Ehrlich*, Count Four alleges an MDTCPA claim
based solely on Monarch's alleged violation of TCPA regulation
47 C.F.R. 64.1200(b)(1), which implements the technical
standards delineated in 47 U.S.C. § 227(d).  After carefully

---

227(b)(3), the remedy for violations of the procedural and
technical standards confers no private right of action."); *Klein
v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 540
(S.D.N.Y 2005) ("[U]nder the TCPA, it is the province of the
state attorneys general and the F.C.C. to sue . . . for
technical violations.")).

[24] The Maryland Court of Special Appeals referenced 47 U.S.C. §
227(e).  By 2010 amendment, § 227(e) was redesignated as
subsection (f).

analyzing the statutory language and caselaw interpreting that language, the *Ehrlich* court unequivocally held that the MDTCPA does not authorize a private right of action for this, and other, "technical" TCPA violation. *Ehrlich*, 957 A.2d at 172. "If the highest court of the state has not decided an issue of state law, [courts] generally defer to the state's intermediate appellate courts on the issue." *United States v. King*, 673 F.3d 274, 279 (4th Cir. 2012). Moreover, the Fourth Circuit has since cited *Ehrlich* with approval. *Worsham v. Accounts Receivable Mgmt., Inc.*, No. 11-2390, 2012 WL 5503980, at *3 (4th Cir. Nov. 14, 2012) (finding "no reason to reject the determination of the state's intermediate appellate court that this cause of action does not exist under state law").[25]

In light of *Ehrlich, Accounts Receivable*, and related caselaw, Monarch's motion for summary judgment on Count Four will be granted.

   c. FDCPA Claims (Counts Five and Six)

In Count Five, Lynn alleges that Monarch violated 15 U.S.C. § 1692b(3) by communicating with him more than once about another consumer's debt, for the purpose of acquiring location

---

[25] *See also, e.g., Dr. Stuart T. Zaller, LLC v. Pharmawest Pharmacy, Ltd.*, Civil No. CCB-11-789, 2011 WL 5508912, at *2 (D. Md. Nov. 8, 2011) ("Courts have found that the lack of an express private right of action in § 227(d) limits private suits for violation of the TCPA's notice provisions, allowing enforcement of this latter subsection only by state attorneys general."); *id.* (collecting cases).

information about the consumer.  Compl. ¶ 69.  In Count Six,

Lynn alleges that Monarch violated 15 U.S.C. § 1692d(6) by

calling him without meaningfully disclosing its identity in the

calls.  *Id.* ¶ 69.  Monarch argues that it is entitled to summary

judgment on both claims, because the purpose of the calls was

not to obtain "location information," and Lynn--as a nondebtor

third party--was not entitled to meaningful disclosure.  ECF No.

42 at 15, 17.  Lynn objects that, in response to requests for

admission, Monarch stated its purpose in calling the 2250

included "the acquisition of information to locate the subject

account-holders," and Monarch's assertion that Lynn was not

entitled to disclosure is "contrary to the plain language" of

the statute.  ECF No. 48-1 at 16-18.

      i.    Count Five

15 U.S.C. § 1692b(3) prohibits any debt collector

communicating with any person other than the consumer, "for the

purpose of acquiring location information about the consumer,"

from "communicat[ing] with any such person more than once unless

requested to do so by such person or unless the debt collector

reasonably believes that the earlier response of such person is

erroneous or incomplete and that such person now has correct or

complete location information."

Monarch argues that Lynn's claim under that provision

"fails" because its purpose in calling the 2250 number was not

to obtain location information, but because it "believed it was calling the consumers' residences when making the calls." ECF No. 42 at 15-16. In support, Monarch cites Mazzacano's deposition, in which she testified that Monarch's "primary" intent in calling the 2250 number was to reach the debtor. Mazzacno Dep. at 9. However, Monarch also stated in a modified response to Lynn's requests for admission that, "included in this purpose [of collecting money owed to creditors] was the acquisition of information to locate the subject account-holders." Modified Admis. No. 9 (ECF No. 24-3 at 10). Thus, there is a genuine dispute of material fact about whether Monarch called the 2250 number to obtain location information about the debtors believed to be associated with that number.

Monarch's motion for summary judgment on Count Five will be denied.

### ii.   Count Six

15 U.S.C. § 1692d(6) provides that a debt collector violates the section by placing telephone calls "without meaningful disclosure of the caller's identity." "Meaningful disclosure" has been held to require the debt collector "to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business." *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 949 (D. Minn. 2008) (collecting cases). Monarch argues that Lynn's claim must

fail because, as a non-debtor third party, he is not entitled to such disclosure. ECF No. 42 at 18. Alternatively, Monarch argues that it complied with the section. *Id.* at 19. Lynn contests both assertions. ECF No. 48-1 at 17-18.

There is substantial authority that the FDCPA's "meaningful disclosure" requirement is limited to calls to the debtor.[26] Moreover, this limitation is not accidental. As the court explained in *Fashakin v. Nextel Communications*, No. 05-CV-3080 (RRM), 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009), it is best understood by reference to 15 U.S.C. § 1692c(b). Section 1692c(b) prohibits a debt collector from communicating, in connection with the collection of any debt, with any person other than the consumer. Because of this proscription,

> a debt collector confronted by a third-party gatekeeper . . . while attempting to contact the debtor, cannot both provide meaningful disclosure pursuant to § 1692d(6) and comply with the requirements of § 1692c(b) preventing the disclosure of a consumer's personal affairs to third parties.

*Id.* at * 7. The *Fashakin* court concluded that the prohibitions can be "harmonized" only by recognizing that § 1692d(6)'s meaningful disclosure requirements apply "when the telephone

---

[26] *See, e.g., Gryzbowski v. I.C. Sys., Inc.*, 691 F. Supp. 2d 618, 625 (M.D. Pa. 2010) ("The statute requires that debt collectors give meaningful disclosure to the debtor, except when the communication is with a third party."); *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1326 (S.D. Fla. 2009) ("This warning requires that debt callers give "meaningful disclosure of the caller's identity" when placing telephone calls, except when communicating with third parties.").

calls being placed are made directly to the consumer," whereas debt collectors who speak with some other third-party "may not make a meaningful disclosure of identity to this third-party without running afoul of the privacy-protective provisions of the FDCPA." *Id.*

There is no dispute that Lynn was not the debtor on any of the three accounts Monarch was seeking to collect. *See* Lynn Dep. at 12; ECF Nos. 42-1 to 42-3. Accordingly, as in *Fashakin*, if Monarch had provided meaningful disclosure of its identity to Lynn, Monarch would have risked an impermissible third-party contact in violation of 15 U.S.C. § 1692c(b). *Cf. Fashakin*, 2009 WL 790350, at *7. Thus, assuming that Monarch failed to meaningfully disclose its identity to Lynn, this failure cannot subject Monarch to liability under 15 U.S.C. § 1692d(6).

Monarch's motion for summary judgment on Count Six will be granted.[27]

2. Lynn's Cross Motion

a. TCPA Claims (Counts One, Two)

In Count One, Lynn alleges that Monarch violated the TCPA's call charged provision by initiating calls to the 2250 number, which was associated with VoIP service and resulted in his being charged for the calls. Compl. ¶¶ 54-57. In Count Two, Lynn

---

[27] The Court need not consider Monarch's alternative argument that it meaningfully disclosed its identity under 15 U.S.C. § 1692d(6), and Lynn's 1692d(6) claim is time-barred.

seeks injunctive relief under the TCPA for the same conduct.
*Id.* ¶¶ 64-65.  Lynn argues that he is entitled to summary
judgment on both claims, because there is "no dispute" that
Monarch called the 2250 number, for which he was charged, using
an ATDS and without Lynn's prior express consent or permission.
ECF No. 48-1 at 7, 11.  Monarch insists that it is exempt from
liability under the TCPA's residential telephone line provision
and further argues that, even if the call charged provision
applies, Lynn has not offered admissible evidence to show he was
charged for the calls on a per-call basis.  ECF No. 57 at 9-13.

As discussed above, even assuming that Monarch's conduct
was permissible under the residential telephone line provision,
it was prohibited under the separate call charged provision.
*See supra* Part II.C.1(a)(i).  Under § 227(b)(1)(A) (iii), it is
unlawful for any person within the United States to "make any
call (other than a call made for emergency purposes or made with
the prior express consent of the called party) using any [ATDS]
or an artificial or prerecorded voice . . . to any telephone
number assigned to a paging service, cellular telephone service,
specialized mobile radio service, or other radio common carrier
service, *or any service for which the called party is charged
for the call*[.] (emphasis added).  The TCPA authorizes a private
right of action for violation of this subsection, including for
injunctive relief.  *Id.* § 227(b)(3).

Here, there is no evidence that Monarch's calls to Lynn were made for emergency purposes or with Lynn's prior express consent.  The parties have stipulated that the calls used an ATDS, as that term is defined by the TCPA.  ECF No. 33.  Lynn has submitted evidence that his VoIP service provider charged him for each of the calls.  Lynn Aff. ¶ 10; *see also* Lopez Aff. ¶ 3.[28]

Thus, Lynn's cross motion for summary judgment on Counts One and Two will be granted.

b. MDTCPA Claims (Counts Three and Four)

In Count Three, Lynn alleges that Monarch violated the MDTCPA by violating the TCPA's call charged provision.  Compl. ¶ 66.  In Count Four, Lynn alleges that Monarch violated the MDTCPA by violating an implementing *regulation* requiring that all artificial or prerecorded telephone messages state, at the beginning of the message, the identity of the entity responsible for initiating the call.  *Id.* ¶ 67.  Lynn argues that he is

---

[28] Monarch asserts that the Lopez affidavit does not "withstand . . . scrutiny," because it does not indicate Lopez's position with the company or demonstrate how Lopez has personal knowledge of VoIP.MS's billing practices.  ECF No. 57 at 12-13.  Monarch also notes that there are no VoIP.MS documents attached to Lopez's affidavit.  *Id.* at 13.  Monarch concludes that Lynn "has not offered admissible evidence to show he was charged for the calls."  *Id.* at 12.  This Court does not agree.  Even assuming that the Lopez affidavit does not comply with Fed. R. Civ. P. 56(c)(4), Lynn's affidavit declares that "[m]y VoIP.MS account was charged for each of the 37 calls alleged in ¶ 23 . . . in [six] second increments."  Lynn Aff. ¶ 9.  Monarch has offered no evidence to rebut this assertion.

entitled to summary judgment on both claims, because Count Three is derivative of the TCPA violation alleged in Count One, and because Monarch "violated the MDTCPA by violating the FCC regulations." ECF No. 48-1 at 12. Monarch objects that, because Lynn's TCPA claim lacks merit, so too does his derivative claim. ECF No. 57 at 13. Monarch further argues that the MDTCPA does not provide Lynn a private right of action for a technical TCPA violation.

As discussed above, Lynn has shown that he is entitled to summary judgment on Count One; accordingly, he is entitled to summary judgment on his derivative MDTCPA claim in Count Three. *See supra* Part II.C.2(a). However, for the reasons stated in Part II.C.1(b)(ii), there is no private right of action for an alleged violation of the TCPA's technical standards set forth in § 227(d) and implemented by 47 C.F.R. § 64.1200(b).

Thus, Lynn's cross motion for summary judgment will be granted as to Count Three, and denied as to Count Four.

c. FDCPA Claims (Counts Five and Six)

In Count Five, Lynn alleges that Monarch violated 15 U.S.C. § 1692b(3) by communicating with him more than once about another consumer's debt, for the purpose of acquiring location information about those other persons. Compl. ¶ 69. In Count Six, Lynn alleges that Monarch violated 15 U.S.C. § 1692d(6) by calling him without meaningfully disclosing its identity in the

calls.  *Id.*  ¶ 69.  Lynn argues that he is entitled to summary
judgment on both claims, because Monarch has "admitted" that the
purpose of the calls "'included . . . the acquisition of
information to locate the subject account-holders,'" and because
§ 1692d(6) "restricts conduct towards any person."  ECF No. 48-1
at 16 (*quoting* Modified Admis. No. 9 (ECF No. 24-3 at 10)); *id.*
at 18.  Monarch objects that it has "affirmatively shown" that
the primary purpose of its calls to the 2250 number was to reach
the debtors, and that, as a third-party nondebtor, Lynn was not
entitled to disclosure.  ECF No. 57 at 15-17.

15 U.S.C. § 1692b(3) prohibits any debt collector
communicating with any person other than the consumer, "for the
purpose of acquiring location information about the consumer,"
from "communicat[ing] with any such person more than once unless
requested to do so by such person or unless the debt collector
reasonably believes that the earlier response of such person is
erroneous or incomplete and that such person now has correct or
complete location information."  15 U.S.C. § 1692d(6) prohibits
debt collector from placing telephone calls "without meaningful
disclosure of the caller's identity."

Mazzacano testified that Monarch's "primary" intent in
calling the 2250 number was to reach the debtor.  Mazzacano Dep.
at 9.  However, Monarch also admitted that "included in this
purpose [of collecting money owed to creditors] was the

acquisition of information to locate the subject account-
holders." Modified Admis. No. 9 (ECF No. 24-3 at 10). Thus,
there is a genuine dispute of material fact about whether
Monarch called the 2250 number to obtain location information
about the debtors, in violation of 15 U.S.C. § 1692b(3).
Moreover, as stated above, the FDCPA's "meaningful disclosure"
requirement does not apply to calls to third-party nondebtors.
*See supra* Part II.C.1(c)(ii).

Lynn's cross motion for summary judgment on Counts Five and
Six will be denied.

D. Motion to Certify Questions of Law

Lynn has moved to certify two questions of Maryland law to
the Maryland Court of Appeals: (1) whether a private individual
can bring an action under the MDTCPA for any violation of the
TCPA and TCPA regulation 47 C.F.R. § 64.1200; and (2) whether a
private individual can obtain statutory damages under the TCPA
and MDTCPA for the same violation. ECF No. 69. Monarch
counters that Lynn's motion is untimely and certification is
unnecessary because guiding intermediate state court precedent
exists on both questions presented, and the Court is "otherwise
capable of disposing of the legal issues raised in the parties'
summary judgment memoranda, which are neither complicated nor
novel." ECF No. 70 at 2.

"A federal court's certification of a question of state law
to that state's highest court is appropriate when the federal
tribunal is required to address a novel issue of local law which
is determinative in the case before it." *Grattan v. Bd. of Sch.
Comm'rs of Balt. City*, 805 F.2d 1160, 1164 (4th Cir. 1986).[29]
The decision to certify is within the "the sound discretion of
the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 390
(1974). Certification should not be invoked "absent genuinely
unsettled matters of state law." *Arrington v. Colleen, Inc.*,
Nos. AMD 00-191, AMD 00-421, AMD 00-1374, 2001 WL 34117735, at
*5 (D. Md. Mar. 29, 2001) (internal quotation marks omitted).[30]
"When there exist[s] ample precedent to guide federal court
adjudication, the court must decide the case as would a state
intermediate appellate court." *Id.*

The Maryland Uniform Certification of Questions of Law Act
provides a mechanism for certification of questions of law to
the Court of Appeals of Maryland, the State's highest court.
The Act states,

---

[29] *See also Allianz Ins. Co. v. Garrett*, 47 F.3d 665, 665 (4th
Cir. 1995) (certifying question of Virginia law); *Doe v.
Pharmacia & Upjohn, Inc.*, 122 F. App'x 20, 21 (4th Cir. 2005)
(certifying question of Maryland law).

[30] *See also Swearingen v. Owens-Corning Fiberglas Corp.*, 968 F.2d
559, 564 (5th Cir. 1992) ("Certification does not constitute a
panacea for resolution of those complex or difficult state law
questions which have not been answered by the highest court of
the state." (internal quotation marks omitted)).

> The Court of Appeals of this State may answer a question of law certified to it by a court of the United States . . . if [1] the answer may be determinative of an issue in pending litigation in the certifying court and [2] there is no controlling appellate decision, constitutional provision, or statute of this State.

Md. Code Ann., Cts. & Jud. Proc. § 12-603.

Lynn's motion will be denied. As discussed at length above, Lynn's first question (whether there is a private cause of action under the MDTCPA for a technical violation of the TCPA) was directly answered--in the negative--by the Maryland Court of Special Appeals in *Worsham v. Ehrlich*, 957 A.2d 161, 172 (Md. Ct. Spec. App. 2008), *cert. denied*, 406 Md. 747 (2008). *See supra* Part II.C.1(b)(ii). Lynn's second question (whether a private individual can obtain statutory damages under the TCPA and MDTCPA for the same violation) is premature, as this Court has not yet undertaken the damages inquiry. Indeed, Lynn's cross motion specifically moved for summary judgment "with actual damages to be determined separately." ECF No. 48 at 1. Thus, Lynn's motion to certify will be denied.

III. Conclusion

For the reasons stated above, Monarch's motion for summary judgment and Lynn's cross motion for summary judgment will be granted in part and denied in part, and Lynn's motion to certify will be denied.

_____
3/22/13
Date

_____
William D. Quarles, Jr.
United States District Judge