```
                              *
KEVIN M. LYNN,
                              *
     Plaintiff,
                              *
          v.
                              *        CIVIL NO.: WDQ-11-2824
MONARCH RECOVERY MANAGEMENT,
INC.,                         *

     Defendant.               *

                              *
*    *    *    *    *    *    *    *    *    *    *    *    *
```

## MEMORANDUM OPINION

Kevin M. Lynn sued Monarch Recovery Management, Inc. ("Monarch") for violating the Telephone Consumer Protection Act[1] (the "TCPA"), the Maryland Telephone Consumer Protection Act[2] (the "MDTCPA"), and the Fair Debt Collection Practices Act[3] (the "FDCPA"). On March 25, 2013, the Court granted in part and denied in part the parties' cross motions for summary judgment, and denied Lynn's motion to certify questions of law. Pending are Lynn's motion for reconsideration, and Monarch's motion for certification of an immediate interlocutory appeal. For the following reasons, Lynn's motion for reconsideration will be

---

[1] 47 U.S.C. § 227.

[2] Md. Code Ann., Com. Law §§ 14-3201, et seq.

[3] 15 U.S.C. §§ 1692, et seq.

granted in part and denied in part; Monarch's motion for certification will be denied.

I. Background

Since 2006, Lynn has lived on Grouse Court in Frederick, Maryland. Lynn Aff. ¶ 1. The house was previously owned by George Teddy. *Id.* ¶ 3. Also since 2006, Lynn's house phone number has been xxx-xxx-2250 (the "2250 number"). *Id.* ¶ 4. Initially, Lynn subscribed to the 2250 number through Verizon, as a residential line. *Id.* ¶ 5. On or about June 24, 2009, Lynn obtained Voice over Internet Protocol ("VoIP") service[4] for the 2250 number through Canadian company Swiftvox, Inc., d/b/a VoIP.MS. *Id.* ¶ 6; Lopez[5] Aff. ¶ 1. VoIP.MS charges Lynn for incoming calls to the 2250 number, and separately charges Lynn for the transmission of caller ID information of incoming calls. Lynn Aff. ¶ 7.

Monarch is a debt collector. Compl. ¶ 3; Am. Answer ¶ 3; ECF No. 42 at 3. Between July 2010 and January 2011, three separate accounts were placed with Monarch for collection. *See* ECF Nos. 42-1, 42-2, 42-3. Two of the accounts named Teddy as the debtor, and listed Teddy's address as the same Grouse Court

---

[4] VoIP technology transmits voice calls using a broadband Internet connection instead of a regular phone line. *Voice over Internet Protocol (VoIP)*, Fed. Comm. Commission, http://www.fcc.gov/encyclopedia/voice-over-internet-protocol-voip (last visited June 13, 2013).

[5] "Lopez" is Alex Lopez, a VoIP.MS employee. Lopez Aff. ¶ 1.

address as Lynn's. ECF Nos. 42-1, 42-2. The third account named Mark Lynn as the debtor. ECF No. 42-3. Mark Lynn is Lynn's brother, and has lived in or near Tacoma, Washington for eight years. Lynn Aff. ¶ 23.[6] Monarch "identified" the 2250 number as the telephone number for both debtors. Mazzacano Dep.[7] at 39-40, 127.[8]

Beginning on July 19, 2010, Monarch began calling the 2250 number to collect on the accounts. ECF No. 48-5; *see* Mazzacano Dep. at 6.[9] Monarch called the 2250 number 37 times between July 19, 2010 and May 17, 2011. ECF No. 48-5. The calls were made using Aspect dialer equipment, an automatic telephone dialing system ("ATDS"). ECF No. 33.[10] In addition to a monthly rate of

---

[6] According to Lynn, his brother's credit card account was "used primarily if not solely for his personal, family[,] or household purposes." Lynn Aff. ¶ 24.

[7] "Mazzacano" is Monarch's Chief Administrative Officer/Owner Diane Mazzacano. *See* Mazzacano Dep. at 1; Monarch's Answer to Interrog. No. 1.

[8] Specifically, Monarch received the phone number from Accurint, *see* Mazzacano Dep. at 39-40, 127, which Lynn alleges is Monarch's "skip trace" company. *See* ECF No. 58 at 2.

[9] Mazzacano testified that Monarch called the 2250 number "with a specific purpose of" reaching the debtor on the accounts. Mazzacano Dep. at 6, 9. At Lynn's deposition, Lynn's counsel stipulated that all 37 calls were commercial, and that none was a telephone solicitation or made for purposes of telemarketing. Lynn Dep. at 14-16.

[10] The TCPA defines "automatic telephone dialing system" as equipment with the capacity: "(A) to store or produce telephone numbers to be called, using a random or sequential number

$1.49, Lynn's VoIP.MS account for the 2250 number was charged $0.0149 per minute for each of Monarch's 37 incoming calls, in six-second increments. Lynn Aff. ¶ 9; Lopez Aff. ¶¶ 3-5. The account was separately charged $0.00149 for each transmission of caller ID for the incoming calls. Lynn Aff. ¶ 10; Lopez Aff. ¶ 3. On May 12, 2011, Lynn called Monarch twice and advised the recipient that calling his number cost him on a per-minute basis. Lynn Aff. ¶ 22. Monarch called Lynn three more times, on May 13 and 17, 2011. ECF No. 48-5.

On August 30, 2011, Lynn filed suit against Monarch in the Circuit Court for Baltimore County, Maryland. ECF No. 2.[11] On

---

generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The parties have stipulated that Monarch's calls to the 2250 number used an ATDS, as the TCPA defines that term. ECF No. 33.

[11] The complaint pled six causes of action (two each under the TCPA, MDTCPA, and FDCPA):
(1) Violation of 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting a person from using an ATDS to call any telephone number assigned to "any service for which the called party is charged for the call") (Count One);
(2) Injunctive relief under 47 U.S.C. § 227(b)(3) (Count Two);
(3) Violation of Md. Code Ann., Com. Law § 14-3201, for the same TCPA violation alleged in Count One (Count Three);
(4) Violation of Md. Code Ann., Com. Law § 14-3201, for violation of TCPA regulation 47 C.F.R. § 64.1200(b)(1) (requiring that all artificial or prerecorded voice telephone messages "state clearly the identity of the business, individual, or other entity that is responsible for initiating the call") (Count Four);
(5) Violation of 15 U.S.C. § 1692b(3) (prohibiting debt collectors communicating with someone other than the consumer, for the purpose of acquiring location information

4

October 3, 2011, Monarch removed the action to this Court. ECF No. 1. On October 14, 2011, Monarch answered the complaint. ECF No. 5. On November 14, 2011, Monarch filed an amended answer. ECF No. 17. On July 27, 2012, Monarch moved for summary judgment. ECF No. 41. On August 18, 2012, Lynn opposed Monarch's motion and cross moved for summary judgment. ECF No. 48. On September 11, 2012, Monarch opposed Lynn's cross motion and replied. ECF No. 57. On September 22, 2012, Lynn replied. ECF No. 58. On December 6, 2012, Lynn moved to certify two questions of law regarding the MDTCPA to the Maryland Court of Appeals. ECF No. 69. On December 26, 2012, Monarch opposed the motion to certify. ECF No. 70. On January 20, 2013, Lynn replied. ECF No. 71.

On March 25, 2013, the Court granted in part and denied part the parties' cross motions for summary judgment, and denied Lynn's motion to certify. ECF Nos. 72, 73. Relevant here, the Court held that Lynn's TCPA claims are within the statute's

---

about the consumer, from communicating with such person more than once) (Count Five); and
(6) Violation of 15 U.S.C. § 1692d(6) (prohibiting debt collectors from placing telephone calls without meaningfully disclosing their identity) (Count Six).
Lynn sought $ 55,500 in statutory damages for Count One; an injunction for Count Two; $18,500 in statutory damages, and attorney's fees, for Count Three; Two; $18,500 in statutory damages, and attorney's fees, for Count Four; $37,000 in actual and statutory damages, and attorney's fees, for Count Five; and $38,000 in actual and statutory damages, and attorney's fees, for Count Six. Compl. at 10.

"call charged" provision (47 U.S.C. § 227(b)(1)(A)(iii)), which makes it unlawful for a person to use an ATDS to call, *inter alia*, "any telephone number assigned to . . . any service for which the called party is charged for the call."[12]  Because Lynn submitted evidence that he was charged for each of the calls initiated by Monarch, *see* ECF No. 72 at 4, the Court granted Lynn's motion for summary judgment--and denied Monarch's--on Counts One, Two, and Three.[13]  ECF No. 72 at 20, 21, 31, 32; ECF

---

[12] Section 227(b)(1)(A)(iii) provides, in full:
> (b) Restrictions on use of automated telephone equipment
> (1) Prohibitions
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
> **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
> * * *
> **(iii)** *to any telephone number assigned to* a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, *or any service for which the called party is charged for the call*[.] (italicized emphasis added).

Section 227(b)(1)(B) (the "residential telephone line" provision) prohibits "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)."

[13] Count Three pled an MDTCPA violation for the same conduct alleged in Count One.  Compl. ¶ 66.  The MDTCPA provides, in relevant part, that a person "may not violate . . . [t]he

6

No. 73.  The Court also held that the TCPA's technical

standards--prescribed in § 227(d) and implemented by 47 C.F.R. §

64.1200(b)--do not authorize a private right of action, and thus

granted Monarch's motion for summary judgment, and denied

Lynn's, on Count Four.  ECF No. 72 at 24-25, 32; ECF No. 73.[14]

On April 8, 2013, Lynn moved for reconsideration.  ECF No.

75.  On April 22, 2013, Monarch moved for certification of an

interlocutory appeal.  ECF No. 76.  On April 25, 2013, Monarch

opposed Lynn's motion for reconsideration.  ECF No. 80.  On May

9, 2013, Lynn opposed Monarch's motion for certification.  ECF

No. 83.  On May 28, 2013, Monarch replied.  ECF No. 84.

II. Analysis

  A. Lynn's Motion for Reconsideration

    1. Legal Standard

Motions for reconsideration of an interlocutory order are

governed by Federal Rule of Civil Procedure 54(b), under which

"any order . . . may be revised at any time before the entry of

a judgment adjudicating all the claims and all the parties'

---

[TCPA]."  Md. Code Ann., Com. Law § 14-3201.  Otherwise stated,
the statute was enacted "merely to enable a private right of
action under the TCPA."  *Worsham v. Ehrlich*, 957 A.2d 161, 172
(Md. Ct. Spec. App. 2008), *cert. denied*, 406 Md. 747 (2008).

[14] Because the Court's resolution of Lynn's FDCPA claims (Counts
Five and Six) has not been challenged, *see generally* ECF Nos.
75, 77, the Court will not discuss the rulings here.

7

rights and liabilities." Fed. R. Civ. P. 54(b).[15] Thus, when warranted, a district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).[16] Resolution of the motion is "committed to the discretion of the district court," *id.* at 515, and "the goal is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010) (internal citations omitted).

Although Rule 60(b) applies only to final judgments, a court may consider the reasons in that rule when deciding whether to grant relief under Rule 54(b).[17] *See Fayetteville*

---

[15] *See Mateti v. Activus Fin., LLC*, No. DKC-08-0540, 2009 WL 3633339, at *4 (D. Md. Oct. 27, 2009).

[16] "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe*, 326 F.3d at 514 (*citing* 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.04[3] (3d ed.) ("Rule 60(b) does not govern relief from interlocutory orders . . . .")); *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.").

[17] Under Rule 59(e), a motion to alter or amend a final judgment may be granted only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Under Rule 60(b), a court may grant relief from a judgment or order for: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing

8

*Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991); *Mateti*, 2009 WL 3633339, at *4.

2. The Merits

Lynn asks the Court to reconsider denial of summary judgment on his MDTCPA "claims,"[18] and of his motion to certify, on the grounds that "Maryland's highest court . . . has not decided this issue" and the only reported Maryland appellate case on point[19] was wrong. *See* ECF No. 75 at 1-3. Monarch argues that Lynn's motion "merely recites the same arguments the Court previously considered and rejected," rendering reconsideration inappropriate. ECF No. 80 at 2.

A court's discretion to review an interlocutory order is "not subject to the strict standards applicable to motions for reconsideration of a final judgment,"[20] but is "within the plenary power of the Court . . . to afford such relief . . . as

---

party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b).

[18] Lynn was granted summary judgment on his derivative MDTCPA claim (Count Three). ECF No. 72 at 32; ECF No. 73; *see supra* note 11. Thus, the Court will assume that Lynn seeks reconsideration of the Court's denial of summary judgment to him (and grant of summary judgment to Monarch) on his second MDTCPA claim (Count Four).

[19] *Worsham v. Ehrlich*, 957 A.2d 161 (Md. Ct. Spec. App. 2008), *cert. denied*, 406 Md. 747 (2008).

[20] *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003).

justice requires."[21]  Although Rules 59(e) and 60(b) do not

govern reconsideration of an interlocutory order, the Fourth

Circuit has suggested that at least parts of those rules may

guide a court's analysis.[22]  In considering whether to revise

interlocutory decisions, district courts in this Circuit have

looked to whether movants presented new arguments[23] or evidence,[24]

---

[21] *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1473 (4th Cir. 1991) (internal citation and quotation marks omitted).

[22] *See Fayetteville Investors*, 936 F.2d at 1470, 1472 (declining to "thoroughly express our views on the interplay of Rules 60, 59, and 54" but citing *Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102 (M.D. Pa. 1989), in which Rule 60(b) guided the court's reconsideration of an interlocutory order); *Pritchard v. Wal-Mart Stores, Inc.*, 3 F. App'x 52, 53 (4th Cir. 2001) (per curiam) (citing an earlier case applying Rule 60(b) to hold that a district court did not err in denying a motion to reconsider an interlocutory order); *see also Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 332-39 (D. Md. 2000) (guided by Rules 59(e) and 60(b), court declined to amend interlocutory order because movant had presented no new facts and had failed to show that other cases dictated a different result).

[23] *See, e.g.*, *McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 596 (E.D.N.C. 2009) ("Generally, motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling.") (internal quotation marks omitted)), *aff'd*, 410 F. App'x 630 (4th Cir. 2011).

[24] *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003).

or whether the court has "obviously misapprehended a party's position or the facts or applicable law."[25]

Count Four of Lynn's complaint alleged that Monarch violated the MDTCPA by violating 47 C.F.R. § 64.1200(b),[26] which implements 47 U.S.C. § 227(d) ("Technical and procedural standards"). *See* Compl. ¶ 67. The Court relied on the Maryland Court of Special Appeals's decision in *Worsham v. Ehrlich*, 957 A.2d 161 (Md. Ct. Spec. App. 2008),[27] *cert. denied*, 406 Md. 747 (2008)--cited with approval in *Worsham v. Accounts Receivable Management, Inc.*, No. 11-2390, 2012 WL 5503980, at *3 (4th Cir. Nov. 14, 2012)--in granting Monarch's motion for summary judgment on Count Four, and denying Lynn's cross motion on that Count. ECF No. 72 at 25, 32. The Court further denied Lynn's motion to certify, concluding that his first question (whether there is a private cause of action under the MDTCPA for a technical violation of the TCPA) had already been answered in *Ehrlich*, and his second question (whether a private individual

---

[25] *Duke Energy Corp.*, 218 F.R.D. at 474 (internal quotation marks omitted).

[26] Requiring that all artificial or prerecorded telephone messages state, at the beginning of the message, the identity of the entity responsible for initiating the call. 47 C.F.R. § 64.1200(b)(1) (implementing § 227(d)(3)(A)).

[27] The *Ehrlich* court held that the MDTCPA does not authorize a private right of action for technical TCPA violations (i.e., violations of § 227(d)). *Ehrlich*, 957 A.2d at 172.

can obtain statutory damages under the TCPA and MDTCPA for the same violation) was premature. *Id.* at 36.

Lynn principally argues that the Court should not defer to *Ehrlich*, because the "same" court had earlier ruled, incorrectly, that the TCPA does not authorize *any* private right of action, and because the *Ehrlich* decision improperly relied on legislative intent.[28] Lynn also reiterates that "[a] holding that the [MDTCPA] creates a private right of action for one portion of the federal TCPA or FCC regulations, but not for others" is "contrary to the plain language of the [MDTCPA]." ECF No. 75 at 3; *see* ECF No. 48-1 at 14-16.

In apparent reference to the Rule 59(e) and 60(b) factors, Lynn asserts that the U.S. Supreme Court's decision in *Citizens United v. FEC*, 558 U.S. 310 (2010), which "opened the floodgates in certain areas for almost unlimited political spending," "[a]rguably . . . is a change of the law . . . warranting further consideration." ECF No. 75 at 4. Finally, Lynn states that the Court should reconsider its decision not to certify his damages question, because liability on the relevant counts is no longer in dispute. *See* ECF No. 75 at 7.

---

[28] ECF No. 75 at 3 (*citing R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.*, 815 A.2d 816 (Md. Ct. Spec. App. 2003), *rev'd*, 857 A.2d 1 (Md. 2004)), 4; *see* ECF No. 48-1 at 14-15.

Lynn cites no case or statute for the proposition that a state court's reversal on an unrelated legal issue permanently deprives the court of authority to determine all others. *See* ECF No. 75 at 3.

12

A motion for reconsideration is "not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request." *Sanders v. Prince George's Pub. Sch. Sys.*, No. RWT 08cv501, 2011 WL 4443441, at *1 (D. Md. Sept. 21, 2011). The Court previously considered, and rejected, Lynn's arguments about the correctness of—and, thus, propriety of deferring to--the Maryland Court of Special Appeals's decision in *Ehrlich*. *Citizens United* is not an "intervening" change in controlling law, did not involve the MDTCPA, and, accordingly, has no relevance here. Thus, the Court will not reconsider its denial of summary judgment to Lynn on Count Four, or of Lynn's motion to certify the question relating to that Count. *McLaurin*, 666 F. Supp. 2d at 596.

However, because Lynn has offered new arguments in support of his request to certify the question whether an individual can obtain statutory damages under both the TCPA and MDTCPA for the same violation, the Court will reconsider denial of that part of his motion. *See McLaurin*, 666 F. Supp. at 596; *Reyazuddin v. Montgomery Cnty., Md.*, No. DKC 11-0951, 2012 WL 642838, at *3 (D. Md. Feb. 27, 2012).

"A federal court's certification of a question of state law to that state's highest court is appropriate when the federal tribunal is required to address a novel issue of local law which

is determinative in the case before it." *Grattan v. Bd. of Sch. Comm'rs of Balt. City*, 805 F.2d 1160, 1164 (4th Cir. 1986). The decision to certify is within the "the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 390 (1974). Certification should not be invoked "absent genuinely unsettled matters of state law." *Arrington v. Colleen, Inc.*, Nos. AMD 00-191, AMD 00-421, AMD 00-1374, 2001 WL 34117735, at *5 (D. Md. Mar. 29, 2001) (internal quotation marks omitted).[29] "When there exist[s] ample precedent to guide federal court adjudication, the court must decide the case as would a state intermediate appellate court." *Id.*

Counts One and Three of Lynn's complaint seek statutory damages under the TCPA and MDTCPA for the same violation. Compl. ¶¶ 70, 72. Whether a plaintiff can recover double damages under the TCPA and MDTCPA has been addressed--though not decided--in at least two opinions by the Maryland Court of Special Appeals. *See Worsham v. Integrated Credit Solutions, Inc.*, No. 0815 (Md. Ct. Spec. App. Filed Apr. 10, 2007) (unpublished), ECF No. 57-2; *Powers v. Dupree*, No. 2604 (Md. Ct.

---

[29] *See also Swearingen v. Owens-Corning Fiberglas Corp.*, 968 F.2d 559, 564 (5th Cir. 1992) ("Certification [is] not . . . a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state." (internal quotation marks omitted)).

14

Spec. App. Filed Jan. 22, 2009) (unpublished), ECF No. 57-3.[30]
In *Integrated Credit*, the court did not directly address the
issue of double damages,[31] but stated that, if the issue were
"properly raised and argued on some other occasion," there
"might be a legitimate question" as to their availability. No.
0815 at 3 n.3. Specifically, the court explained that the
MDTCPA "does not spell out in any way what conduct might be a
violation of Maryland law," but rather "makes reference to
whatever might be a violation of the federal TCPA." *Id.* at 4.
Thus, "it might well be argued that Maryland's 2004 enactment of
what is now § 14-3201(2) is no more than the modality by which
Maryland manifested its approval of treating violations of the
federal TCPA as private rights of action in Maryland." *Id.* at
4-5. "Such an argument, however, has not been raised by either
of the parties in this case." *Id.* at 5.

In *Powers*, the court quoted *Integrated Credit* while
expressing similarly "serious doubts as to the availability of
double damages for an identical violation of both acts." No.

---

[30] Under Maryland Rule of Civil Procedure 1-104, unreported
opinions by the Court of Special Appeals are "neither precedent
within the rule of *stare decisis* nor persuasive authority." Md.
Rule Civ. P. 1-104.

[31] In *Integrated Credit*, the issue was whether the circuit court
had miscalculated the *amount* of damages awarded for TCPA and
MDTCPA violations in a default judgment. No. 0815 at 2-3.

15

2604 at 2, 8 (internal quotation marks omitted).³² "In light of
the Court of Special Appeals['s] . . . skepticism and concern
regarding the availability of double damages under both the
federal and state TCPAs," another judge in this district has
concluded that plaintiffs are "likely not entitled to damages
under both statutes." *Pasco v. Protus IP Solutions, Inc.*, 826
F. Supp. 2d 825, 846 (D. Md. 2011).

"[C]ertification is never compelled, and this [C]ourt
remains under a duty to decide questions of state law, even if
difficult and uncertain, when necessary to render judgment."
*Legard v. EQT Prod. Co.*, 771 F. Supp. 2d 607, 609 (W.D. Va.
2011) (internal citation omitted). When there is no caselaw
directly on point, the district court "attempts to do as the
state court would do if confronted with the same fact pattern."
*Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). Certification is
unnecessary when existing authority permits the court to reach a
"reasoned and principled conclusion." *See Simpson v. Duke*

---

³² In *Powers*, the circuit court had similarly awarded statutory
damages, under both the TCPA and MDTCPA, in a default judgment.
No. 2604 at 2. The plaintiffs appealed to contest, among other
things, the damages' sufficiency. *Id.* at 3. Because the
defendants did not participate in the appeal, the availability
of double damages was not before the Court of Special Appeals,
which again declined to consider the question "*nostra sponte.*"
*Id.* (internal quotation marks omitted). On remand, the circuit
court declined to award any statutory damages under the MDTCPA.
*Id.* The Court of Special Appeals reversed, on the grounds that,
under the "law of the case" doctrine, the circuit court erred in
revisiting the issue. *Id.* at 14.

16

*Energy Corp.*, 191 F.3d 448 (Table), 1999 WL 694444, at *3 (4th Cir. 1999).[33] Although not controlling, *Integrated Credit* and *Powers* explained, at length, the rationale underlying the Maryland Court of Special Appeals's doubtfulness about the availability of double damages under the MDTCPA and TCPA for the same violation. *See, e.g., Integrated Credit*, No. 0815 at 3 n.3. Lynn's statutory question is straightforward and, under the circumstances, the Court is capable of resolving it.

Moreover, this case has been pending for almost two years. *See* docket. During that time, the parties and the Court have devoted considerable resources to resolving the issues at hand. Certification would involve an unnecessary "imposition on the time and resources of the [state court]" and "an increase in the expenditure of time and resources by the parties." *West Am. Ins. Co. v. Bank of Isle of Wight*, 673 F. Supp. 760, 764 (E.D. Va. 1987). Accordingly, supplemental briefing on the issue of double damages--not certification--is most appropriate here. The Court will affirm its order denying Lynn's motion to certify the damages question.

Thus, Lynn's motion for reconsideration will be granted-- and additional briefing on whether a private individual can

---

[33] *See also* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4248 (3d ed. 2007) (considering whether the court can reach "a principled rather than conjectural" conclusion).

17

obtain statutory damages under the TCPA and MDTCPA for the same violation will be ordered--in part and denied in part.

B. Monarch's Motion for Certification of Interlocutory Appeal

1. Legal Standard

"[28 U.S.C. §] 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals."[34] Under § 1292(b), a district court may certify an interlocutory appeal when (1) the appeal involves "a controlling question of law," (2) as to which there is "substantial ground" for disagreement, *and* (3) immediate appeal "may materially advance the ultimate termination of the litigation."[35] Whether to certify an interlocutory appeal is within the district court's discretion.[36] However, "§ 1292(b) should be used sparingly and . . . its requirements must be strictly

---

[34] *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), *quoted in Randolph v. ADT Sec. Servs., Inc.*, No. DKC-09-1790, 2012 WL 273722, at *4 (D. Md. Jan. 30, 2012).

[35] Section 1292(b) provides, in full:
> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

[36] *Riley v. Dow Corning Corp.*, 876 F. Supp. 728, 731 (M.D.N.C. 1992), *reconsidered on other grounds*, 876 F. Supp. 732 (M.D.N.C. 1992), *aff'd*, 986 F.2d 1414 (4th Cir. 1993).

construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). "[T]he kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation[.]" *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438 (Table), 1989 WL 42583, at *5 (4th Cir. 1989). Interlocutory appeal should not be sought "to provide early review of difficult rulings in hard cases." *Abortion Rights Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982).

2. The Merits

Monarch asks the Court to certify an immediate interlocutory appeal of its grant of summary judgment for Lynn (and denial of summary judgment to Monarch) as to Counts One through Three, to determine:

> [f]or purposes of the [TCPA], 47 U.S.C. § 227, is a debt collection call to a residential telephone line attached to [VoIP] technology subject to the exemptions for calls made to a residential telephone line?

ECF No. 76 at 3.

a. Controlling Question of Law

The term "question of law," for purposes of § 1292(b), refers to "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine"-- as opposed to "whether the party opposing summary judgment had raised a genuine issue of material fact." *Clark Constr. Grp.,*

19

*Inc. v. Allglass Sys., Inc.*, No. DKC-02-1590, 2005 WL 736606, at
*2 (D. Md. March 30, 2005). "A *controlling* question of law
[includes] every order [that], if erroneous, would be reversible
error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d
747, 755 (3d Cir.) (emphasis added), *cert. denied*, 419 U.S. 885
(1974).

Here, there can be no dispute that the issue raised in
Monarch's motion--whether a debt collection call to a
residential line that is attached to VoIP service and results in
charges to the called person is subject to the TCPA's call
charged provision--is a "question of law" under § 1292(b). *See*
*infra* note 42. The question is "controlling" because, if the
Court's grant of summary judgment to Lynn on Counts One through
Three was erroneous, the decision would be reversible on appeal.
Thus, the first element of § 1292(b) is present.

b. Substantial Ground for Differences of Opinion?

"An issue presents a substantial ground for difference of
opinion if courts, as opposed to parties, disagree on a
controlling legal issue." *Randolph*, 2012 WL 273722, at *6.
"[T]he mere presence of a disputed issue that is a question of
first impression, standing alone, is insufficient to demonstrate
a substantial ground for difference of opinion." *In re Flor*, 79
F.3d 281, 284 (2d Cir. 1996). But, "when a matter of first
impression also ha[s] other grounds for difference of opinion--

and met the other two criteria--district courts in this circuit have certified the issue for interlocutory appeal." *Kennedy v. Villa St. Catherine, Inc.*, No. PWG-09-3021 (WDQ), 2010 WL 9009364, at *2 (D. Md. June 16, 2010).

Monarch disputes the Court's holding that calls to Lynn's 2250 number are within the TCPA's call charged provision (47 U.S.C. § 227(b)(1)(A)(iii)), on the grounds that the TCPA provisions are "mutually exclusive" and the residential telephone line provision applies here. ECF No. 76 ¶ 6. According to Monarch, its conclusion is "required" by "the rules of statutory construction," which "mandate" that, when a general and specific rule apply, "the specific rule must control." ECF No. 77 at 2-3. Monarch further argues that, under the Court's ruling, debt collectors will "*never* be able to autodial residential telephone lines without risk of liability," because "a person will never know when a residential telephone line is attached to [VoIP] technology" and whether the technology charges a flat fee or nominal charge per usage. *Id.* at 3 (emphasis in original). Finally, Monarch notes that the issue "is clearly one to which the parties cannot agree." *Id.* at 9. Lynn objects that the Court "is not required to change the law to accommodate [Monarch's] business model preference." ECF No. 83 at 4.

The Court begins "with the language employed by Congress
and the assumption that the ordinary meaning of that language
accurately expresses the legislative purpose." *United States v.
Albertini*, 472 U.S. 675, 680 (1985)). "[W]here the statutory
language provides a clear answer," the Court's analysis ends.
*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). In
construing a statute, the Court "interpret[s] the words in their
context and with a view to their place in the overall statutory
scheme." *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (internal
quotation marks omitted). "[I]t is a commonplace of statutory
construction that the specific governs the general[.]"
*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

The language of the TCPA is unambiguous. Section
227(b)(1)(A)-(D) delineates four categories of prohibited
conduct. Among those is § 227(b)(1)(A)(iii), which prohibits
using an ATDS to call any telephone number "assigned to a paging
service, cellular telephone service, specialized mobile radio
service, or other radio common carrier service, or any service
for which the called party is charged for the call."[37] The

---

[37] Monarch does not dispute that, under the doctrine of last
antecedent, the phrase "for which the called party is charged
for the call" only modifies "any service." *See* ECF No. 72 at 16
n.20; *see, e.g.*, *Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS
(BGS), 2011 WL 579238, at *5-6 (S.D. Cal. Feb. 9, 2011)
(plaintiff need not show he was charged for the calls or text
messages to his cell phone to prevail under the TCPA); *see also
Buslepp v. Improv Miami, Inc.*, No. 12-60171-CIV, 2012 WL

parties have stipulated that Monarch's calls to Lynn used an
ATDS. ECF No. 33. The Court found that Lynn's VoIP service,
which he had attached to his residential telephone line, charged
him for each of the calls initiated by Monarch. ECF No. 72.
Monarch does not dispute this finding for purposes of its § 1292
motion. ECF No. 77 at 4 n.2. Thus, beginning with the language
employed by Congress--and assuming that "the ordinary meaning of
that language accurately expresses the legislative purpose"--the
TCPA's call charged provision plainly prohibits Monarch's
conduct. *See Albertini*, 472 U.S. at 680.

Monarch objects that the TCPA provisions are "intended" to
be mutually exclusive, and the exemption for calls to the
residential telephone line "cannot be ignored" by applying the
"catch-all" call charged provision. ECF No. 77 at 7. Besides
quoting the language of both provisions, and citing the basic
principle that "the specific governs the general" in questions

1560408, at *2 (S.D. Fla. May 4, 2012) (agreeing with the
plaintiff's interpretation that "if a call is made to a
telephone number assigned to a cellular telephone service . . .
th[e]n that allegation is sufficient to assert a claim. A
plaintiff could *alternatively* state a claim if his telephone
number is assigned to *any service* for which the called party is
charged." (emphasis added)); *Silbaugh v. Omni Credit*, No. ELH-
11-1387, 2012 WL 294870, at *2 n.1 (D. Md. Jan. 31, 2012) (the
phrase "for which the called party is charged for the call" only
modifies "any service" (internal quotation marks omitted));
*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999,
1009 (N.D. Ill. 2010) ("Due to the occurrence of two disjunctive
prepositions in the relevant portion of § 227, the phrase "for
which the called party is charged for the call" only modifies
"any service." (internal quotation marks omitted)).

23

of statutory interpretation, Monarch provides no authority to
support its conclusion that the residential telephone line
provision is, in fact, "more specific." *See generally id.* at 5-
8. Monarch's sole basis for arguing that the provisions are
mutually exclusive is that to hold otherwise would "undermine"
congressional intent to "exempt calls made to residential
telephone lines that do not contain an unsolicited advertisement
or constitute a telephone solicitation." *Id.* at 7.[38]

"Courts do try to avoid imputing nonsense to Congress.
This means, however, modest adjustments to texts that do not
parse." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642
(7th Cir. 2012) (Easterbrook, C.J.). Monarch's interpretation
is not wholly implausible, and may be more sensible[39] given the
difficulty of determining whether a called number is attached to
VoIP service and thus subject to the TCPA's call charged
provision. However, to the extent that Monarch believes its
interpretation promotes "better" policy, that argument should be
made to the legislature--not the judiciary. *See id.* ("When a
text can be applied as written, a court ought not revise it by
declaring the legislative decision 'absurd.' Nor should a court

---

[38] Of course, to hold the call charged provision inapplicable to
Monarch's conduct would similarly undermine Congress's intent--
memorialized in § 227(b)(1)(A)(iii)--that automated calls not
add expense to annoyance.

[39] *But see id.*

24

try to keep a statute up to date. Legislation means today what it meant when enacted." (internal citations omitted)).

That the parties disagree on the issue is clear. However, for purposes of § 1292(b), the litigants' positions are irrelevant--otherwise, every contested decision would be appropriate for immediate interlocutory appeal. What matters is whether the movant has shown a substantial ground for differences of opinion among the *courts*. *Randolph*, 2012 WL 273722, at *6. Monarch has failed to meet this burden.

c. Material Advancement?

Even if Monarch had carried its burden of showing a substantial ground for differences of opinion, it must also show that the requested interlocutory appeal would materially advance the litigation. *See* § 1292(b). Monarch asserts, without elaboration, that the Fourth Circuit's determination of this issue on interlocutory appeal would "speed up the litigation." ECF No. 77 at 9.

Interlocutory review is a "narrow exception" to the "longstanding rule against piecemeal appeals." *Costar Group Inc. v. LoopNet, Inc.*, 172 F. Supp. 2d 747, 750 (D. Md. 2001). Accordingly, it is appropriate only in "extraordinary cases" when early appellate review might avoid "protracted and expensive litigation." *Regan*, 552 F. Supp. at 366. In determining whether certification will materially advance the

25

ultimate termination of the litigation, a district court should consider whether an immediate appeal would: "(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994), *quoted in Clark*, 2005 WL 736606, at *4.[40]

Discovery has been completed. *See* ECF No. 32. Liability on Count Five has yet to be resolved; neither has the Court determined the amount of damages to which Lynn is entitled. *See generally* ECF Nos. 72, 73. Thus, Monarch has not shown that an immediate interlocutory appeal would "materially advance" the case for purposes of § 1292(b). *See Orson, Inc.*, 867 F. Supp. at 322.[41]

_____

[40] *Cf. Fannin*, 1989 WL 42583, at *5 ("The mere fact that [the issue's] resolution at this time *may* save pre-trial and trial effort and expense is not determinative; that of course can be said of any interlocutory appeal." (emphasis in original)).

[41] *See also Lizarbe v. Rondon*, No. PJM 07-1809, 2009 WL 2487083, at *3 (D. Md. Aug. 12, 2009) ("[E]ven if one or all of Plaintiffs' claims for indirect liability fail, that will not dispose of the case, making interlocutory review inappropriate."); *City of Charleston, S.C. v. Hotels.com, LP*, 586 F. Supp. 2d 538, 548 (D.S.C. 2008) ("Since this litigation would continue before the court regardless of what the appellate court decided, the court cannot see how certifying this question for interlocutory appeal would materially advance this litigation towards a more efficient and expedient conclusion."); *Clark Constr. Grp.*, 2005 WL 736606, at *4 (considering it "doubtful" that allowing the defendants to appeal the issue of liability--while the issue of damages remained--would "materially advance

26

Monarch's motion for certification will be denied.[42]

III. Conclusion

For the reasons stated above, Lynn's motion for
reconsideration will be granted in part and denied in part;
Monarch's motion for certification will be denied.

$\underline{\hspace{1cm} 6/17/13 \hspace{1cm}}$
Date

$\underline{\hspace{3cm}}$
William D. Quarles, Jr.
United States District Judge

---

the ultimate termination of the litigation" (internal quotation
marks omitted)).

[42] Even if certification were proper, the Court notes that
Monarch's proposed question--whether "a debt collection call to
a residential telephone line attached to [VoIP] technology [is]
subject to the exemptions for calls made to a residential
telephone line?"--is poorly constructed. *See* ECF No. 76 at 3.
Contrary to Monarch's suggestion, this Court's memorandum
opinion did not "disregard[]" the possibility that Monarch's
calls to Lynn were subject to the residential telephone line
provision, ECF No. 77 at 2, but, rather, expressly assumed it to
be true. ECF No. 72 at 15-16. The Court concluded, however,
that Monarch's conduct violated another prohibition in the TCPA:
namely, the section prohibiting ATDS calls to any telephone
number assigned to "any service for which the called party is
charged for the call." *Id.* at 19. It is this conclusion to
which Monarch objects, on the grounds that a defendant cannot
violate both provisions through the same conduct. *See* ECF No.
77 at 2 (characterizing as "fundamentally wrong" the proposition
that both TCPA provisions could apply to the same call).